UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 11, 2014

NOMURA HOLDING AMERICA, INC.,

                    Plaintiff,

                v.

FEDERAL INSURANCE COMPANY,

                   Defendant.

-------------------------------------------------X

13 Civ. 5913 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

       Plaintiff Nomura Holding America, Inc. ("Nomura" or "Plaintiff") initiated this action against Federal Insurance Company ("Federal" or "Defendant") on August 21, 2013.  The parties' dispute arises out of Federal's denial of coverage under insurance policies purchased by Nomura for claims related to five lawsuits initiated between 2011 and 2012 against Nomura, its subsidiaries, or its directors and officers; the lawsuits arose out of various securitizations of residential mortgage-backed securities.  Federal contends that two provisions of the insurance policies preclude coverage for those lawsuits, and the parties have cross-moved for summary judgment on that issue.  For the reasons set forth in this Opinion, the Court finds that coverage is not available for the five lawsuits under the policies Nomura purchased from Federal, and on that basis, grants in part and denies in part both parties' motions.

## BACKGROUND[1]

### A.   Factual Background

### 1.   The Parties and Nomura's Business

Nomura is a Delaware corporation with its principal place of business in New York; Federal is an Indiana corporation with its principal place of business in New Jersey.  (Joint 56.1 ¶¶ 1-2).

Nomura provides investment and financial services and products to clients, through its various wholly-owned subsidiaries, by creating and selling securities by way of public offerings in the U.S. securities markets.  (Pl. 56.1 ¶ 1).  As relevant here, those subsidiaries include (i) Nomura Credit & Capital, Inc. ("NCCI"); (ii) Nomura Asset Acceptance Corporation ("NAAC"); (iii) Nomura Home Equity Loan, Inc. ("NHELI"); and (iv) Nomura Securities International, Inc. ("NSI") (individually, a "Nomura Sub," and collectively, the "Nomura Subs").

---

[1]   The facts stated herein are drawn from the parties' Joint Statement of Facts Pursuant to Local Civil Rule 56.1 ("Joint 56.1"), Plaintiff's Local Rule 56.1 statement ("Pl. 56.1"), Defendant's responses thereto ("Def. 56.1 Response"), as well as the materials attached to the Declarations of Eric Connuck, Nancy Prahofer, and Barbara Steiner.  Citations to a particular Local Rule 56.1 Statement incorporate by reference the documents cited therein.

Where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent … controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

The briefs pertaining to Plaintiff Nomura's motion for partial summary judgment are referred to as "Pl. Br.," "Def. Opp.," and "Pl. Reply."  The briefs pertaining to Defendant Federal's motion for summary judgment are referred to as "Def. Br.," "Pl. Opp.," and "Def. Reply."

(*Id.* at ¶ 2).  Prior to October 2007, each of the Nomura Subs was engaged in some facet of the business of securitizing residential mortgage loans originated by third parties, otherwise known as residential mortgage-backed securities, or "RMBS."  (*Id.* at ¶ 3).

RMBS certificates entitle a certificateholder to an interest in a trust, which in turn holds one or more pools of residential mortgage loans; the certificateholder receives an allocation of the income stream of, among other things, repayment of mortgage loans held by the trust.  (Pl. 56.1 ¶ 4).  In the event of a mortgage default, the trust absorbs any loss, and payments to certificateholders are reduced by a corresponding amount.  (*Id.*).

The creation of RMBS involves multiple parties, including originators, sponsors, depositors, issuing entities, and underwriters.  (Pl. 56.1 ¶ 6).  Broadly speaking, originators issue mortgage loans to borrowers, secured by residential properties, and underwriters sell certificates to investors, either directly or indirectly.  (*Id.* at ¶¶ 7-8).  Sponsors purchase various types of residential mortgage loans from originators, and pool the mortgage loans to be securitized by the depositor.  (*Id.* at ¶¶ 9, 12).

Between 2003 and 2007, NCCI acted as a sponsor for various RMBS, and would also pool the mortgage loans to be securitized by a depositor; NCCI exists today but no longer undertakes new business concerning RMBS or residential mortgage loans.  (Pl. 56.1 ¶ 9).  NHELI and NAAC are special purpose corporations that acted as a depositors in RMBS transactions, NHELI from 2005 to 2007, and NAAC from 2003 to 2007.  (*Id.* at ¶ 10).  Both

corporations exist today but are not operational.  (*Id.*).  Lastly, NSI, a registered broker-dealer, was the lead or co-lead underwriter for various NAAC and NHELI offerings.  (*Id.* at ¶ 13).

### 2. The *Plumbers' Union* Action

On January 31, 2008, various Nomura Subs, as well as certain of Nomura's directors and officers ("D&Os"), were named in a case that was ultimately styled as *Plumbers' Union Local No. 12 Pension Fund, Individually and On Behalf of All Others Similarly Situated* v. *Nomura Asset Acceptance Corp., et al.*, No. 08-cv-10446 (RGS) (D. Mass., filed Mar. 18, 2008 (the "*Plumbers' Union* Action").  (Joint 56.1 ¶ 10).  The case was removed from Massachusetts state court on March 18, 2008, to the United States District Court for the District of Massachusetts.  (*Id.*).  On June 30, 2008, plaintiffs filed an Amended Complaint.  (Pl. 56.1 ¶ 54).  The case was consolidated with two other cases involving pension and welfare funds; accordingly, a Consolidated Amended Complaint (the "*Plumbers' Union* CAC") was filed thereafter on January 20, 2009.  (Joint 56.1 ¶ 11; Pl. 56.1 ¶ 55).  The *Plumbers' Union* CAC is the operative complaint in that action.  (Pl. 56.1 ¶ 55).

The *Plumbers' Union* CAC alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, *l*(a)(2), *o*, against NSI, NAAC, and certain Nomura D&Os, among other defendants. (Pl. 56.1 ¶¶ 53, 56).  The plaintiffs in that case brought claims against the Nomura defendants in connection with the issuance of certificates in eight trusts, even though plaintiffs only alleged purchases of certificates in two of

4

those trusts.  (*Id.*).  With respect to the two securitizations in which they had purchased certificates, the *Plumbers' Union* plaintiffs alleged that the offering documents for those securitizations — in which NCCI was the sponsor, NAAC was the depositor, and NSI was the underwriter — contained misleading statements or omissions of material facts.  (*Id.* at ¶¶ 57-61).  Those misstatements, at a general level, were as follows: (i) the mortgages were issued in accordance with the relevant underwriting guidelines; (ii) the properties securing the mortgages were properly valued; and (iii) the credit ratings for the securitizations reflected the actual risk of investing.  (*Id.* at ¶ 62).

On September 30, 2009, the district judge presiding over the *Plumbers' Union* Action dismissed the claims pertaining to the six securitizations in which no plaintiff had purchased a certificate on Article III standing grounds, and dismissed the claims brought in connection with the two securitizations in which plaintiffs had purchased certificates for failure to state a claim.  *See Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 303-04 (D. Mass. 2009).  On January 20, 2011, the United States Court of Appeals for the First Circuit affirmed the standing-based dismissals, but reversed in part the other dismissals, allowing those claims to proceed insofar as they related to certain misstatements regarding the lending practices of a specific originator, First National Bank of Nevada ("FNBN").  *See Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, 632 F.3d 762 (1st Cir. 2011).

### 3.    The Insurance Policies at Issue

As of 2008, when the *Plumbers' Union* action was initiated, Nomura's D&O liability insurance was provided by the Greenwich Insurance Company; Nomura initiated a claim during that period in connection with *Plumbers' Union.* (Joint 56.1 ¶ 9; Compl. ¶¶ 3, 16-20).  Nomura subsequently purchased three successive one-year policies from Federal for D&O liability insurance for the period from July 1, 2010, to July 1, 2013 (individually, a "Policy," and collectively, the "Policies").  (Joint 56.1 ¶ 5).  Nomura contends that it paid substantial premiums to Federal for the Policies, and that it purchased them to protect itself against liability to investors, including with respect to the Nomura Subs' former RMBS business.  (Pl. 56.1 ¶¶ 16, 17).

Understanding the claims raised in the parties' cross-motions requires a basic understanding of the language of the Policies.  By their terms, the Policies provide coverage for "Loss which the Organization becomes legally obligated to pay on account of any Securities Claim first made against the Organization during the Policy Period … for a Wrongful Act committed, attempted, or allegedly committed or attempted by the Organization or the Insured Persons before or during the Policy Period, but only if such Securities Claim is reported to the Company in writing."  (Pl. 56.1 ¶ 34).  "Loss" means the amount the "Organization [] becomes legally obligated to pay on account of any covered Claim."  (*Id.* at ¶ 27).  "Claim" is defined in relevant part as "a civil proceeding commenced by the service of a complaint or similar pleading" against an Insured Person for a Wrongful Act (Steiner Decl. Ex. F), and

"Securities Claim" is defined in relevant part as a Claim that "alleges that an Organization or any of its Insured Persons (i) violated a federal, state, local, or foreign securities law or a rule or regulation promulgated under any such securities law; or (ii) committed a Wrongful Act that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such Organization" (Pl. 56.1 ¶ 31). "Wrongful Acts" are defined in relevant part as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted." (*Id.* at ¶ 33). Coverage under the Policies is triggered on a "claims-made" basis. (*Id.* at ¶ 36). The Policies limit Nomura's liability to $5 million per Claim, and $5 million per Policy Period.[2] (*Id.* at ¶ 20).

Two provisions in the Policies have particular significance to the instant motions. First, a "manuscript endorsement"[3] to each of the Policies provided that no coverage would be available for any Claim against Nomura that was

> based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or matter described or cited below or the same or any substantially similar fact, circumstance, situation, transaction, event or matter:
>
> Amended Complaint for Violation of Sections 11, 12(a)(2) and 15 of the Securities Act 1933 (USA), PLUMBERS' UNION LOCAL NO. 12 PENSION FUND, Individually and on behalf of All Others Similarly Situated vs. NOMURA ASSET ACCEPTANCE

---

[2]      Capitalized terms not defined herein are defined in the Policies.

[3]      "A manuscript endorsement is negotiated, drafted, and attached to the insurance contract for the benefit of a specific insured."  *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 118 n.2 (S.D.N.Y. 2007) (internal citations omitted).

CORPORATION, et al., United States District Court for the District of Massachusetts, No. 08-10446-RGS.

(Pl. 56.1 ¶ 49) (the "*Plumbers' Union* Exclusion").

Second, Section 13(g) of each of the Policies provides that

> All Related Claims shall be treated as a single Claim first made on the date the earliest of such Related Claims was first made … regardless of whether such date is before or during the Policy Period.

(Pl. 56.1 ¶ 44). "Related Claims" are defined as "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." (*Id.* at ¶ 30).

### 4.    The Underlying Actions

The parties' dispute centers on whether the Policies provide coverage for five lawsuits filed between 2011 and 2012 (the "Underlying Actions"). (Joint 56.1 ¶ 6). Those actions are, in order of filing date:

(i)    *Fed. Home Loan Bank of Boston* v. *Ally Financial, Inc., et al.*, No. 11-cv-10952 (GAO) (D. Mass, filed April 20, 2011) (the "*FHLB-Boston* Action"). The *FHLB-Boston* Action alleges claims under Massachusetts state law, including the state securities law, against Nomura, NCCI, NAAC, and NSI, related to FHLB-Boston's purchases of certificates in four securitizations in 2006 and 2007. (Pl. 56.1 ¶¶ 66-70).

(ii)   *Nat'l Credit Union Admin. Bd., as Liquidating Agent of U.S. Central Fed. Credit Union* v. *RBS Securities, Inc., et al.*, No. 11-cv-2340 (JWL/JPO) (D. Kan., filed June 20, 2011) (the "*NCUA Kansas-U.S. Central*" action). The *NCUA Kansas-U.S. Central* Action alleges claims under the Securities Act and state securities laws against NHELI, related to U.S. Central Federal Credit Union's purchase of certificates in a 2007 securitization. (Pl. 56.1 ¶¶ 72-76).

8

(iii)   *Nat'l Credit Union Admin. Bd., as Liquidating Agent of Western Corp. Fed. Credit Union* v. *RBS Securities, Inc., et al.*, No. 11-cv-5887 (GW/JEM) (C.D. Cal., filed July 18, 2011) (the "*NCUA California-WesCorp* Action").  The *NCUA California-WesCorp* Action alleges claims against NAAC and NHELI arising under the Securities Act, related to WesCorp's purchases of certificates in two securitizations in 2006 and 2007.  (Pl. 56.1 ¶¶ 79-82).

(iv)   *Fed. Hous. Fin. Agency, as Conservator for the Fed. Nat'l Mortg. Ass'n and the Fed. Home Loan Mort. Co.* v. *Nomura Holding Amer., Inc., et al.*, No. 11-cv-6201 (DLC) (S.D.N.Y., filed Sept. 2, 2011) (the "*FHFA* Action").  The *FHFA* Action alleges claims against Nomura, NCCI, NHELI, NAAC, NSI, and various Nomura D&Os, arising under the Securities Act, as well as pendent claims under Virginia and District of Columbia law, related to Fannie Mae's and Freddie Mac's purchases of certificates in seven securitizations between 2005 and 2007.  (Pl. 56.1 ¶¶ 90-106).

(v)    *The Prudential Ins. Co. of Amer., et al.* v. *Nomura Secur. Int'l, Inc., et al.*, No. 12-cv-5597 (SDW/MCA) (D.N.J., filed Aug. 1, 2012) (the "*Prudential* Action").  The Prudential Action alleges claims against NCCI, NHELI, and NSI arising under New Jersey State law, including the state securities law, related to Prudential's purchases of certificates in five securitizations between 2006 and 2007.  (Pl. 56.1 ¶¶ 113-16, 118).

The parties agree that the Nomura Subs qualify as Subsidiaries of Nomura under the Policies, and that each of the Underlying Actions constitutes a "Securities Claim" for "Wrongful Acts" under the Policies.  (Pl. 56.1 ¶¶ 37-40).  Moreover, Nomura has defended and is defending the Nomura Subs and Insured Persons in the Underlying Actions, and has thus incurred Defense Costs in doing so, which constitute Losses for the purposes of the Policies. (*Id.* at ¶¶ 41-42).

Nomura provided notice of the Underlying Actions to Federal under the Policies, and requested that Federal provide coverage for each of them.  (Joint 56.1 ¶ 7).  Federal ultimately denied coverage for each of the Underlying Actions under the *Plumbers' Union* Exclusion and Section 13(g), claiming that the Underlying Actions were Related Claims, and "substantially similar," to the *Plumbers' Union* action.  (*Id.* at ¶ 8; Pl. 56.1 ¶ 51).

## B.    The Instant Litigation

Plaintiff initiated this action on August 21, 2013, seeking a declaratory judgment that Defendant had wrongly denied coverage for the Underlying Actions, and that Defendant had breached its duty to provide coverage for those actions.  (Dkt. #1).  On September 24, 2013, and September 27, 2013, the parties notified the Court that they wished to proceed directly to summary judgment.  (Dkt. #12, 13).  Accordingly, pursuant to the briefing schedule endorsed by the Court on October 28, 2013 (Dkt. #15), and amended on December 5, 2013 (Dkt. #19), Plaintiff's motion for partial summary judgment (Dkt. #20) and Defendant's motion for summary judgment (Dkt. #27) were simultaneously filed on December 11, 2013.  The parties' opposition papers were also simultaneously filed on January 17, 2014 (Dkt. #31, 33), and the motion was fully submitted as of the filing of the parties' reply papers on February 7, 2014 (Dkt. #38, 39).  On February 17 and 18, 2014, the parties submitted supplemental letter briefing regarding subsequent developments in a cited matter.  (Dkt. #40, 41).

The Court held a telephone conference on July 31, 2014, in order to provide the parties with an opportunity to submit supplemental briefing on three issues implicated by the parties' summary judgment motions. (*See generally* Transcript of July 31, 2014 Conference ("July 31 Tr.") (Dkt. #43)). First, the Court asked the parties to consider the impact, if any, of Federal's use of narrower language in defining "Related Claims" in the analysis of relatedness implicated by Section 13(g). (July 31 Tr. 4-7). To that end, the Court expressed concern that it was not "helped by the legal or [] factual analysis ... presented by the parties in their motion papers," since many decisions cited by Federal involved policy language that appeared to define the term "related" more broadly than did the Policies. (*Id.*). Next, the Court asked the parties to consider whether the Court could discern relatedness, as defined in the Policies, solely from the record before it. (*Id.* at 7-8). Third, the Court noted that the parties had argued for coverage as a binary determination: either all of the Underlying Actions were covered, or all were not. The Court asked the parties to consider whether the Policies supported a finding of partial relatedness. (*Id.* at 8-9).

The parties submitted supplemental letter briefing on August 22, 2014 (Dkt. #45, 46). Notably, while offering antithetical responses to the Court's other questions, both parties agreed that the record before the Court was sufficient to ascertain relatedness, and, by extension, that no further factual development was needed. (*Id.*). Pursuant to the Court's request, Nomura submitted copies of the relevant prospectus supplements for each offering

implicated by the Underlying Actions and *Plumbers' Union* complaints on
September 3, 2014.  (Dkt. #47).[4]

## DISCUSSION

**A.   Applicable Law**

**1.   Summary Judgment Generally**

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all
the submissions taken together "show[] that there is no genuine issue as to any
material fact and the movant is entitled to judgment as a matter of law."  *See
Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby,
Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence
of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is
"material" if it "might affect the outcome of the suit under the governing law,"
and is genuinely in dispute "if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also
Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).
The movant may discharge this burden by showing that the nonmoving party
has "fail[ed] to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party will bear the

---

[4]    The Court is permitted to take judicial notice of publicly-filed documents, including
those filed in proceedings involving the Securities and Exchange Commission (the
"SEC"), as well as in other judicial matters.  *Kavowras* v. *N.Y. Times Co.*, 328 F.3d 50,
57 (2d Cir. 2003) (noting that courts may take judicial notice of public filings); *Kramer*
v. *Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial
notice of documents filed in other courts ... to establish the fact of such litigation and
related filings." (internal citation omitted)).

burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

## 2.    Interpretation of Insurance Contracts

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Porco* v. *Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009) (quoting *In re Estates of Covert and Another*, 97 N.Y.2d 68 (2001) (internal quotation marks omitted)). Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal citation omitted).[5]   The Court must interpret a contract's terms "in light of 'common speech' and the reasonable expectations of a businessperson." *Belt Painting Corp.* v. *TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (internal citation omitted).

If a contract term is "susceptible to at least two reasonable interpretations," the case may not be resolved on summary judgment, because the meaning of an ambiguous contract term is "generally an issue of fact, requiring the trier of fact to determine the parties' intent." *U.S. Naval Inst.* v. *Charter Commc'ns, Inc.*, 875 F.2d 1044, 1048 (2d Cir. 1989) (internal citations omitted).  In contrast, if the terms of the contract are not ambiguous, the dispute is properly resolved on summary judgment, and the court must endeavor to "give effect to the intent of the parties as expressed in the clear

---

[5]      The parties agree that this action is governed by New York law; accordingly, the Court applies New York law.  (*See* Def. Br. 13 n.5; Pl. Opp. 8 n.5 (citing *Admiral Ins. Co.* v. *Travelers Cas. and Sur. Co. of Am.*, 881 F. Supp. 2d 570, 575 n.3 (S.D.N.Y. 2012) (a court may accept the agreement of the parties as to choice of law in a diversity action); *Federal Ins. Co.* v. *Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, [that] is sufficient to establish choice of law.")))

language of the contract." *Mount Vernon Fire Ins. Co.* v. *Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks and citation omitted).

When insurance contracts contain an exclusion provision, "'[t]he insurer generally bears the burden of proving that the claim falls within the scope of an exclusion ... [by] establish[ing] that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.'" *Seneca Ins. Co.* v. *Kemper Ins. Co.*, No. 02 Civ. 10088 (PKL), 2004 WL 1145830, at *10 (S.D.N.Y. May 21, 2004) (quoting *Vill. of Sylvan Beach* v. *Travelers Indem. Co.*, 55 F.3d 114, 115-16 (2d Cir. 1995)), *aff'd*, 133 F. App'x 770 (2d Cir. 2005) (summary order); *see also Seaboard Sur. Co.* v. *Gillette Co.*, 64 N.Y.2d 304, 311 (1984) (stating that exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (internal citation omitted)).

Lastly, "[w]here an exclusion lists more than one type of relationship to the actions for which coverage is sought and is separated in the disjunctive — by use of the word 'or' — the insurer need not show that every relationship is unambiguous and applicable so long as one relationship is unambiguous and applicable." *Quanta Lines Ins. Co.* v. *Investors Capital Corp.*, No. 06 Civ. 4624 (PKL), 2009 WL 4884096, *20 (S.D.N.Y. Dec. 17, 2009) (citing *Pereira* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 525 F. Supp. 2d 370, 376 (S.D.N.Y. 2007) ("[T]he particular structure of the prior litigation exclusion in the [insurance] policy does not require [the insurer] to demonstrate that every term in the clause is unambiguous.  The exclusion clause lists *many* possible relationships

that [the litigations] may have to one another such that the … judgment would be barred from coverage, and it does so with the use of the critical conjunction 'or.'" (emphasis in original)), *aff'd sub nom. Quanta Specialty Lines Ins. Co.* v. *Investors Capital Corp.*, 403 F. App'x 530 (2d Cir. 2010) (summary order); *see also Zunenshine* v. *Executive Risk Indem., Inc.*, No. 97 Civ. 5525 (MBM), 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998) (noting that "both exclusions are phrased in the disjunctive, that is, a claim is excluded if it arises out of 'any fact, circumstance, situation, transaction, event or Wrongful Act'" (emphasis in original) (internal citation omitted)), *aff'd*, 182 F.3d 902 (2d Cir. 1999).

## B.    Analysis

The parties have cross-moved for summary judgment on the issue of whether the *Plumbers' Union* Exclusion and Section 13(g) bar coverage for the Underlying Actions.[6]  The parties agree that there are no material issues of fact precluding summary judgment, and that the terms of these provisions are unambiguous.  The parties dispute, however, the provisions' legal significance.

The Court must first decide, as a threshold matter, whether the provisions at issue are unambiguous as a matter of law.  *See Parks Real Estate Purchasing Grp.* v. *St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir.

---

[6]    Nomura argues that Federal is liable to pay Nomura's Loss and Defense Costs incurred in connection with each of the Underlying Actions.  However, Federal has not taken a position on whether, if there is coverage, all three Policies have been triggered.  (*See* Pl. Br. 3 n.2; Def. Opp. 23 n.19).  Though the Court is not being asked to decide this issue, it notes in passing that, in light of the "related" analysis required by Second Circuit law, it is difficult for Nomura to argue that each of the five Underlying Actions is not "related to" each other, and, by extension, that the Underlying Actions are not "related to" the *Plumbers' Union* Action.

2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide." (internal quotation marks and citation omitted)).  If the Court finds these provisions to be unambiguous, it must then interpret the provisions in light of "'their plain and ordinary meaning.'" *Ellicott Square Court Corp.* v. *Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (quoting *Essex Ins. Co.* v. *Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010)).  And while Nomura "bears the burden of showing that an insurance coverage covers the loss," Federal "bears the burden of showing that an exclusion applies to exempt it from covering a claim." *MBIA Inc.* v. *Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011) (internal citation omitted).  Lastly, any doubts must be resolved in favor of Nomura. *Id.*

    For the reasons discussed below, the Court finds that summary judgment is appropriate and that both the *Plumbers' Union* Exclusion and Section 13(g) are unambiguous.  But while Federal has failed to meet its burden in showing that the *Plumbers' Union* Exclusion bars coverage, Nomura has failed to show that the Policies provide coverage for the Underlying Actions in light of Section 13(g).  Federal is thus entitled to summary judgment on this latter basis.

     **1.**    **The *Plumbers' Union* Exclusion**

          **a.**    **The Provision Is Unambiguous**

    The *Plumbers' Union* Exclusion forecloses coverage for any Claim against Nomura that is

> based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or matter described or cited below or the same or any substantially similar fact, circumstance, situation, transaction, event or matter:
>
> Amended Complaint for Violation of Sections 11, 12(a)(2) and 15 of the Securities Act 1933 (USA), PLUMBERS' UNION LOCAL NO. 12 PENSION FUND, Individually and on behalf of All Others Similarly Situated vs. NOMURA ASSET ACCEPTANCE CORPORATION, et al., United States District Court for the District of Massachusetts, No. 08-10446-RGS.

(Pl. 56.1 ¶ 49).[7]

This provision can be understood as having two parts. The first portion pertains to claims that are "based upon, arising from, or in consequence of" the *Plumbers' Union* Amended Complaint. The Court finds this language to be unambiguous, in line with relevant Second Circuit cases that have reached the same result. *See, e.g.*, *Am. Home Assur. Co.*, 639 F.3d at 568 (finding similar language to be unambiguous, and noting that "the phrase 'arising out of' requires only that there be some causal relationship," and does not differ significantly from "based on" (emphasis omitted) (internal citations omitted)).

The second portion of this provision pertains to claims involving "the same or any substantially similar fact, circumstance, situation, transaction, event or matter" "described or cited below"; the matter "described or cited

---

[7]    Plaintiff notes that although the *Plumbers' Union* Exclusion refers to the Amended Complaint, the actual operative complaint — the CAC — is derivative of that complaint, and "for [the] purposes of this motion, it does not matter which of those amended pleadings is considered the 'Amended Complaint' referenced in the *Plumbers' Union* Exclusion, as the result is the same with respect to either amended pleading." (Pl. Br. 7 n.6). The Court has reviewed the factual allegations contained in both documents, and agrees. Accordingly, the Court refers to the allegations in the CAC in this Opinion.

below" is the *Plumbers' Union* Amended Complaint.  The Court also finds this language to be unambiguous.  *See, e.g.*, *Weinreich* v. *Sandhaus*, 850 F. Supp. 1169, 1180 (S.D.N.Y. 1994) (finding the term "similar" to be unambiguous, and relying upon the dictionary definition of the term as "1: having characteristics in common ... 2: alike in substance or essentials" (internal citation omitted)), *amended on other grounds*, 156 F.R.D. 60 (S.D.N.Y. 1994); *see also United States* v. *Martinez-Santos*, 184 F.3d 196, 204 (2d Cir. 1999) ("According to Webster's Dictionary, 'similar' is defined as 'having characteristics in common; very much alike; comparable.'" (internal citation omitted)).  Having found the *Plumbers' Union* Exclusion to be unambiguous, the Court will now apply its terms.

### b.   The Parties' Suggested Readings of the *Plumbers' Union* Exclusion

#### i.   The First Portion of the Provision

The first portion of the *Plumbers' Union* Exclusion excludes claims that are "based upon, arising from, or in consequence of" the *Plumbers' Union* Amended Complaint.  Nomura argues that this category would include any future amended complaint in that action, such as the CAC, or any individual action that purports to opt-out from the class action.  (*See* Pl. Br. 14-15). While it quibbles with what may constitute a hypothetically excluded claim under this language, Federal does not seriously dispute that this portion of the provision is inapplicable to the Underlying Actions.  (*See, e.g.*, Def. Opp. 6 & n.6).

19

The relevant case law supports that conclusion as well.  The Second Circuit has previously interpreted the phrase "arising out of" to require "some causal relationship," and to be akin to "based on."  *Am. Home Assur. Co.*, 639 F.3d at 568.  It is undisputed that the Underlying Actions are not causally related to the *Plumbers' Union* Amended Complaint: they are not opt-outs from that action and were not filed in that litigation.[8]  The first portion of this provision thus does not exclude coverage.

### ii.  The Second Portion of the Provision

The second portion of this provision, however, is the subject of considerable dispute between the parties.  Nomura urges that this phrase — excluding coverage for "the same or any substantially similar fact, circumstance, situation, transaction, event or matter" "described or cited below" — applies only to derivative claims that are the "same," or "substantially similar" to the *Plumbers' Union* Amended Complaint.  (Pl. Br. 15-17).  Nomura reasons that the "event or matter" "described or cited below" is the *Plumbers' Union* Amended Complaint, and not the factual allegations contained in the *Plumbers' Union* Amended Complaint or the legal arguments raised therein. (*Id.*).

In support of this reading, Nomura raises several *expresio unius est exclusio alterius*-type arguments.  (*See* Pl. Br. 15-18).  For instance, in an

---

[8]    The *NCUA California-WesCorp* and *NCUA Kansas-U.S. Central* Actions specifically reference, and incorporate factual allegations contained in, the *Plumbers' Union* Amended Complaint, though neither action purports to opt out from *Plumbers' Union*, nor allege a causal relationship with *Plumbers' Union.*

exclusion contained in the same manuscript endorsement, Federal excludes coverage for "any of the matters *encompassed in*" the SEC investigation of Bernard L. Madoff. (*Id.* at 16-17, nn. 8-9 (emphasis added)). Similarly, Subsection 6(b) of the Policies excludes coverage for Claims based upon suits pending on or prior to July 30, 2004, "or the same or substantially the same fact, circumstance or situation *underlying or alleged therein.*" (*Id.* at 16 (emphasis added)). Thus, Nomura contends, where Federal sought to exclude coverage for the underlying matters encompassed in certain actions, it did; where it did not, it did not. (Pl. Opp. 11 (citing *MBIA*, 652 F.3d at 165-66 & n.7 (even where terms of the policy were unambiguous, the insurer failed to demonstrate that a provision barred coverage for certain costs where other terms in the policy showed that "the parties knew how to contract about the costs" and that the insurer "could have written the contract to contemplate exactly this situation"))). For that reason, Nomura concludes, the *Plumbers' Union* Exclusion should be read only to exclude coverage for Claims that are the "same," or "substantially similar," to the *Plumbers' Union* Amended Complaint, a class of claims that does not include the Underlying Actions for the reasons discussed above.

Federal instead urges the second portion of the *Plumbers' Union* Exclusion to be read as follows: excluded Claims include those "'based upon ... the same or any substantially similar fact, circumstance, situation, transaction, event or matter' as those that are 'described or cited' *in* the Amended Complaint in *Plumbers['] Union.*" (Def. Br. 13; Def. Opp. 5 (quoting

the *Plumbers' Union* Exclusion) (emphasis added)).  Notably, however, the provision does not contain the word "in," as Federal repeatedly suggests that it does.  (*Id.*).  The Exclusion instead states that coverage is barred for Claims that include "substantially similar fact[s]" to "the matter described or cited below"; that "matter" is not "the claims alleged in *Plumbers' Union* Amended Complaint," nor even "the factual allegations contained in the *Plumbers' Union* Amended Complaint," but rather only the *Plumbers' Union* Amended Complaint.

Neither party's reading of this provision is entirely satisfactory.  For starters, Nomura's suggested reading renders a portion of this provision redundant.  While the "based upon" portion of the exclusion implies a causal relationship that the "same" portion does not, it is difficult to imagine how an action, but not necessarily its underlying factual allegations, could be the "same" or "substantially similar" to the *Plumbers' Union* Amended Complaint without also being "based upon, or arising from" the *Plumbers' Union* Amended Complaint.  Accepting Nomura's argument means rejecting the "same" or "substantially similar" portion of the provision as superfluous.  It is well-settled in this Circuit that "contract[ual] interpretations that render provisions of a contract superfluous" are "disfavored," and for this reason the Court rejects Nomura's interpretation of the exclusion.  *Int'l Multifoods Corp.*, 309 F.3d at 86 (collecting cases and citing, *inter alia*, *Garza* v. *Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) ("Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible.'")).

22

Federal's interpretation engenders comparable problems.  First, upon
consideration of the policy as a whole, it appears that where the parties — and
in particular, Federal — sought to exclude claims based upon the facts *alleged
in* a certain matter, they did so.  *See MBIA*, 652 F.3d at 165 (courts must read
a contract "as a whole" and construe its terms "in context" (internal citation
omitted)).  Federal did not do so here.  Second and more importantly, Federal's
interpretation materially alters its terms by adding words and phrases that are
simply not there.  "'[E]xclusions or exceptions from policy coverage ... are not to
be extended by interpretation or implication, but are to be accorded a strict
and narrow construction.'" *Cragg* v. *Allstate Indem. Corp.*, 17 N.Y.3d 118, 122
(2011) (quoting *Pioneer Tower Owners Ass'n* v. *State Farm Fire & Cas. Co.*, 12
N.Y.3d 302, 308 (2009) ("Our precedents require us to adopt the readings that
narrow the exclusions, and result in coverage.")).

On this basis, Federal has failed to carry the "heavy burden" of
demonstrating that "clear and unmistakable language" in the *Plumbers' Union*
Exclusion excludes coverage for the Underlying Actions, and is "subject to no
other reasonable interpretation." *See Cont'l Cas. Co.* v. *Rapid-Am. Corp.*, 80
N.Y.2d 640, 652 (1993) (internal citations omitted).  In fact, it is only through
adding missing terms to this exclusion that Federal reaches the result it
desires.  The Court may not do the same, and must instead must resolve this
dispute in Nomura's favor.  *See MBIA*, 652 F.3d at 158 ("Doubts are resolved in
favor of the insured." (internal citation omitted)); *see also Consedine* v. *Portville
Cent. Sch. Dist.*, 12 N.Y.3d 286, 293 (2009) ("Courts 'may not by construction

add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.'" (internal citation omitted)); *Cragg*, 17 N.Y.3d at 122 ("'[E]xclusions or exceptions from policy coverage ... are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.'" (internal citation omitted)).

### 2.    Section 13(g)

#### a.    The Provision Is Unambiguous

The Court next turns to the second provision at issue here, the language at Section 13(g) of each Policy that provides that

> All Related Claims shall be treated as a single Claim first made on the date the earliest of such Related Claims was first made ... regardless of whether such date is before or during the Policy Period.

(Pl. 56.1 ¶ 44).  As noted above, "Related Claims" are defined as "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."  (*Id.* at ¶ 30).  "Wrongful Acts" are in turn defined to include "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted."  (*Id.* at ¶ 33).

The Court agrees with the parties that the terms of this provision are unambiguous.  (Pl. Br. 12; Def. Br. 12).  The other operative terms in Section 13(g) — Claim, Policy Period — are also defined in the Policies.  Moreover, the Policies define the term "Related Claim" using similar language to that used in

24

the *Plumbers' Union* Exclusion, which the Court has already found to be
unambiguous.

> ### b.    The Application of Section 13(g) to Determine Coverage or Exclusion

Before the Court applies Section 13(g)'s terms, however, it must first
address the parties' competing arguments regarding how Section 13(g) may be
applied.  Federal contends that Section 13(g) determines coverage, since the
Policies provide coverage only for Claims first made during the Policy Period;
the *Plumbers' Union* claim was first made in 2008, during a policy period
covered by a different insurer.  (Def. Br. 21-22; *see also* Pl. 56.1 ¶ 34 (quoting
the Policies' insuring clause, which covers "Loss which the Organization
becomes legally obligated to pay on account of any Securities Claim *first made
against the Organization during the Policy Period* … for a Wrongful Act
committed, attempted, or allegedly committed or attempted by the Organization
or the Insured Persons before or during the Policy Period, but only if such
Securities Claim is reported to the Company in writing." (emphasis added))).
Thus, because Section 13(g) deems the Underlying Actions as being Claims
made when the *Plumbers' Union* Claim was first made, they fall outside the
ambit of Federal's coverage.  (Def. Br. 21, 24 n.9 (noting that Nomura should
"look to the Greenwich policy for any coverage" in the Underlying Actions); Def.
Opp. 15-19).  Under Federal's reading of the Policies, Nomura bears the burden
of demonstrating that coverage applies in light of Section 13(g).

Nomura contends instead that Section 13(g) does not determine
coverage, but instead caps Federal's liability for multiple claims based on the

same or related facts.  (*See* Pl. Br. 22-23).  Thus, says Nomura, while Section 13(g) is not itself an exclusion, Federal nonetheless bears the burden of demonstrating that it applies, since coverage would otherwise exist under the Policies.  (Pl. Opp. 20-22).

Several of Nomura's arguments in this regard can be quickly disposed of.  First, it advances a structural argument premised upon the fact that Section 13(g) appears in a section titled "Limit of Liability, Retention and Coinsurance," which is separate from the section titled "Exclusions," or the manuscript endorsement where the *Plumbers' Union* Exclusion appears.  (*See, e.g.*, Pl. Br. 22-24).  However, as Federal notes, location alone does not dictate the meaning of a provision's language, particularly where that provision is stated in unambiguous language, as it is here.  (*See* Def. Opp. 18-19 (citing Policies Section at 6, § 14 ("[t]he description in the headings and sub-headings of [the Policies] are solely for convenience, and form no part of the terms and conditions of coverage"))).

Nomura next argues that accepting Federal's understanding of Section 13(g) would render superfluous the temporal exclusion contained in Section 6(b), which excludes coverage for any claim pending on or prior to July 30, 2004.  (Pl. Opp. 22).  By that section, Nomura contends, Federal has already shifted liability to a prior period covered by a different insurer in Section 6(b).  Thus, Federal is attempting to "rewrite" the Policies to "enlarge the July 30, 2004 cut-off date by pressing [S]ection 13(g) into service as a duplicative, broader temporal exclusion," which would render Section 6(b) superfluous.  (Pl.

Opp. 22).  This argument also fails.  Section 13(g), as Federal interprets it, confines Federal's liability to Claims first made during the Policy Period; by contrast, Section 6(b) contains a strict temporal limitation that would not exclude, for instance, the *Plumbers' Union* Action or any Related Action.  (*See* Compl. ¶ 26 ("The Policies' 'Pending or Prior Litigation' date [contained in Section 6(b)] is July 30, 2004 — long before the *Plumbers' Union* Claim was made.")).  On this basis, even interpreting Section 13(g) as Federal suggests would not negate Section 6(b)'s temporal exclusion.

The more interesting question concerns the allocation of the burden of proof.  Contrary to Federal's arguments, the issue is not free from doubt, in part because of certain semantic distractions that have appeared in the case law.  At times, courts in this Circuit and District have differentiated coverage "exclusions" (as to which the insurer bears the burden of proof) and coverage "bars" (as to which the policyholder typically bears the burden of proof).  *Compare MBIA*, 652 F.3d at 159-62, 164-64 (concluding that provision capping the insurer's liability at $200,000 operated as an exclusion because it would exclude costs that would otherwise be covered under the policies; thus, the insurer bore the "heavy burden" of demonstrating that the provision applied to exclude coverage in "clear and unmistakable language"), *with Quanta Lines*, 2009 WL 4884096, at *14-15 (finding that an interrelated acts provision similarly worded to Section 13(g) barred coverage); *Zahler* v. *Twin City Fire Ins. Co.*, No. 04 Civ. 10299 (LAP), 2006 WL 846352, at *5 (S.D.N.Y. Mar. 31, 2006) (holding that a similarly-worded interrelated wrongful acts provision barred

27

coverage, while a prior notice exclusion excluded coverage); *Seneca*, 2004 WL 1145830, at *4 (finding that a similarly-worded interrelated acts provision barred coverage); *cf. Glascoff* v. *OneBeacon Midwest Ins. Co.*, No. 13 Civ. 1013 (DAB), 2014 WL 1876984, at *5-7 (S.D.N.Y. May 8, 2014) (holding that a similarly-worded interrelated wrongful acts provision did not bar coverage).[9]

The precise difference between "exclusions" and "bars," and the legal implications attendant to that difference, is not entirely clear. One could argue, regardless of nomenclature, that Section 13(g) operates as an exclusion; it certainly does not grant coverage, and it forecloses coverage for certain claims (i.e., those found to be "related") that would otherwise be covered under the Policies. Notably, however, Nomura has explicitly disclaimed such an argument (*see* Pl. Br. 22 ("[Section 13(g)] is not an exclusion."); Pl. Opp. 21 (same)), and the Court will not do Nomura's work for it. More importantly, as discussed in the remainder of this Opinion, the allocation of the burden of proof does not matter in this case; even if Federal bore the burden of demonstrating that coverage was excluded, it has met that burden because it

---

[9]     Nomura also relies heavily on a case from the Northern District of Illinois in arguing that Section 13(g) cannot be used to determine coverage, but is instead a limitation on liability. (Pl. Br. 22-24 (citing *James River Ins. Co.* v. *Rinella & Rinella, Ltd.*, No. 07 C 4233, 2008 WL 4211150, at *5 (N.D. Ill. Sept. 10, 2008), *rev'd sub nom. James River Ins. Co.* v. *Kemper Cas. Ins. Co.*, 585 F.3d 382 (7th Cir. 2009))). Nomura contends that that court considered and rejected the "same" argument Federal raises here; namely, that the language of Section 13(g) determines coverage. (*See* Pl. Br. 22-24). As it happens, the decision was ultimately reversed by the Seventh Circuit, albeit on different grounds. (*See* Def. Opp. 17-19). More fundamentally, however, the district court decision in *James River* does not contain a substantive discussion of Federal's argument, but instead simply notes, in its application of Illinois law, that "[t]he term 'related wrongful acts' is applicable to establishing the limits of liability," and cites to a Seventh Circuit decision that contains a similar pronouncement concerning a different state's law. *See* 2008 WL 4211150, at *5 (citing *Gregory* v. *Home Ins. Co.*, 876 F.2d 602, 604 (7th Cir. 1989) (applying Indiana law)).

has demonstrated that a sufficient factual nexus exists, such that the Underlying Actions are Related Claims to *Plumbers' Union.*

### c.   The Underlying Actions Are Related Claims to the *Plumbers' Union* Claim

The Court must now determine whether any "fact, circumstance, situation, transaction, event or matter" described in the *Plumbers' Union* Amended Complaint is "substantially similar" to those alleged in the Underlying Actions.  Courts commonly apply the so-called "factual nexus" test in order to determine whether claims are the "same" or "substantially similar." "A sufficient factual nexus exists where the Claims 'are neither factually nor legally distinct, but instead arise from common facts' and where the 'logically connected facts and circumstances demonstrate a factual nexus' among the Claims." *Quanta Lines*, 2009 WL 4884096, at *14 (quoting *Seneca*, 2004 WL 1145830, at *9); *accord Zunenshine*, 1998 WL 483475, at *5 (factual nexus requires specific overlapping facts, but does not require that the claims "involve precisely the same parties, legal theories, Wrongful Acts, or requests for relief" (internal alterations omitted)).

In order to ascertain whether a sufficient factual nexus exists, the Court must undertake a "side-by-side review" of the factual allegations in the *Plumbers' Union* Amended Complaint and the Underlying Actions.  *Zahler*, 2006 WL 846352, at *6.  That review reveals that the relevant complaints contain overlapping (and frequently identical) factual allegations, arising from strikingly similar circumstances, alleging similar claims for relief.  *See Zahler*, 2006 WL 846352, at *6 ("A side-by-side review of the Securities Complaint and ERISA

29

Complaint reveals that the facts alleged in the two actions are in many cases identical[.]"); *Seneca*, 2004 WL 1145830, at *9 (finding a factual nexus where the claims shared "numerous logically connected facts and circumstances"); *Zunenshine*, 1998 WL 483475, at *5 (finding a "strong factual nexus" where both lawsuits alleged "four of the same six plaintiffs made virtually identical false statements in reports, press releases, and other public statements" during the same time period); *see also Quanta Lines*, 2009 WL 4884096, at *14-15 (concluding that sufficient factual nexus existed between claims accusing directors of failure to supervise the same representative's sale of the same unregistered securities). The plaintiffs in the *Plumbers' Union* Action and in the Underlying Actions each allege that they invested in reliance on certain misstatements in the offering documents and registration statements filed in connection with various RMBS offerings between 2005 and 2007, and were harmed as a result. (*Compare Plumbers' Union* CAC ¶¶ 11-13, *with FHLB-Boston* Compl. ¶¶ 2, 9, *NCUA California-WesCorp* Compl. ¶ 3, *NCUA Kansas-U.S. Central* Compl. ¶¶ 5-8, *FHFA* Compl. ¶¶ 1, 5, 10, *and Prudential* Compl. ¶ 1). The plaintiffs bring claims under state and federal securities laws in connection with Nomura's liability for alleged misstatements in the offering documents. (*Compare Plumbers' Union* CAC ¶¶ 178-204, *with FHLB-Boston* Compl. ¶¶ 940-62, 972-80, *NCUA California-WesCorp* Compl. ¶¶ 425-33, 474-83, 518-29, 542-53, *NCUA Kansas-U.S. Central* ¶¶ 406-15, *FHFA* Compl. ¶¶ 137-84, 217-48, *and Prudential* Compl. ¶¶ 469-89). Specifically, the

plaintiffs in each action allege that they relied upon the following specific

misrepresentations in the relevant offering documents:

- A representation that underwriting standards were properly followed and applied in determining the creditworthiness of borrowers, particularly with respect to the sufficiency of documentation (such as mortgage applications, financial information, tax forms, and income statements) as to borrowers' ability to repay the mortgages (*compare Plumbers' Union* CAC ¶¶ 3, 5, 67-118, *with FHLB-Boston* Compl. ¶¶ 616-28, 841, *NCUA California-WesCorp* Compl. ¶¶ 320-28, 388, *NCUA Kansas-U.S. Central* Compl. ¶¶ 185-85, 195, 316-24, 337, *FHFA* Compl. ¶¶ 76-85, 113, *and Prudential* Compl. ¶¶ 4, 61-70, 388);

- A statement that "compensating factors" were present that justified the issuance of mortgage loans to borrowers who did not otherwise qualify for those loans (*compare Plumbers' Union* CAC ¶¶ 81-82, *with FHLB-Boston* Compl. ¶¶ 616-28, 842, *NCUA California-WesCorp* Compl. ¶¶ 185-86, 376, 388, *NCUA Kansas-U.S. Central* Compl. ¶¶ 347-49, 355, *FHFA* Compl. ¶ 79, *and Prudential* Compl. ¶¶ 5, 70, 388);

- Inaccuracies concerning the extent to which borrowers were already delinquent in repayment of their mortgage loans (*compare Plumbers' Union* CAC ¶¶ 128-31, *with FHLB-Boston* Compl. ¶ 627, *NCUA California-WesCorp* Compl. ¶ 394, *NCUA Kansas-U.S. Central* Compl. ¶ 337, *FHFA* Compl. ¶¶ 127-29, *and Prudential* Compl. ¶ 133);

- Statements that the values of the underlying mortgages were accurate, and were not inflated as a result of improper property appraisals (*compare Plumbers' Union* CAC ¶¶ 132-42 *with FHLB-Boston* Compl. ¶¶ 623-26, 857-76, *NCUA California-WesCorp* Compl. ¶¶ 187, 301, *NCUA Kansas-U.S. Central* Compl. ¶ 259, *FHFA* Compl. ¶¶ 107, 111-12, 121, *and Prudential* Compl. ¶¶ 77-80);

- Statements that the loan-to-value ratios of the underlying mortgage loans were accurate (*compare Plumbers' Union* CAC ¶¶ 143-46, *with FHLB-Boston* Compl. ¶¶ 618, 627, 878-85, *NCUA California-WesCorp* Compl. ¶¶ 299, 302-04, *NCUA Kansas-U.S. Central*

Compl. ¶¶ 254, 362-64, *FHFA* Compl. ¶¶ 90-95, 106-12, *and Prudential* Compl. ¶¶ 7, 81-84, 147-202); and

- Statements that the mortgage-backed securities investors purchased were investment grade (*compare Plumbers' Union* CAC ¶¶ 147-68, *with FHLB-Boston* Compl. ¶¶ 892-99, *NCUA California-WesCorp* Compl. ¶¶ 93-95, *NCUA Kansas-U.S. Central* Compl. ¶¶ 89-91, *FHFA* Compl. ¶¶ 96-99, 123-26, *and Prudential* Compl. ¶¶ 9, 93-95, 377, 412).

On these bases, the Court finds that the Underlying Actions and *Plumbers' Union* plainly share a strong factual nexus, and the Underlying Actions must be deemed Related Claims to *Plumbers' Union* as a result.

Independent of this fact-specific inquiry, the parties urge the Court to adopt varying definitions of "relatedness" based upon the categories of allegations in the operative complaints; their arguments are neither particularly persuasive nor grounded in the relevant case law. First, Federal contends that the Court should find relatedness on the basis that the plaintiffs in *Plumbers' Union* and the Underlying Actions allege misrepresentations arising from common categories. (Def. Br. 6-10). In fact, it was not until the Court requested supplemental briefing that Defendant submitted an in-depth, allegation-by-allegation review of the operative complaints in support of its argument. (*See* Dkt. #45). Absent this fact-specific review, Federal's urged reading — based solely upon similar categories of misrepresentations — could be applied so expansively that entire business lines could be precluded from coverage based upon a single lawsuit. This is not the law. *See, e.g.*, *Hrobuchak* v. *Fed. Ins. Co.*, No. 3:10-CV-481, 2010 WL 4237435, at *4 (M.D. Pa. Oct. 21, 2010) ("One suit over your business practices in one state [] cannot

mean that your insurer is forever immune from having to extend coverage in future suits.").

Nomura, by contrast, urges a much narrower definition of relatedness. Nomura did not submit a fact-specific analysis of the Underlying Actions and Plumbers' Union, but instead identified and rested upon facial differences between the actions: different plaintiffs, different defendants, different offerings,[10] and different mortgage pools. (*See* Nomura Br. 18-20). Yet Nomura has failed to provide any case law support for such a narrow definition of

---

[10]    In point of fact, there is factual overlap in the offerings. Both the *NCUA California-WesCorp* and *FLHB-Boston* Actions allege claims based upon a securitization that was at issue in, but dismissed on standing grounds from, *Plumbers' Union*. (Pl. Br. 9-10). The *FHLB-Boston* Action further alleges claims based upon another securitization that was at issue in, but dismissed on standing grounds from, *Plumbers' Union*. Nomura contends that because claims related to these securitizations should never have been brought in *Plumbers' Union* in the first place, they cannot be considered Claims made. (Pl. Opp. 16-18). Furthermore, any Claims related to these securitizations could not have been considered "Wrongful Acts" because they had not actually been "allegedly committed or attempted by" Nomura. (*Id.*).

*Quanta Lines* is on point. In that case, the insured argued that because a prior claim had been withdrawn after an investigation determined that the allegations contained in that claim did not involve sales of certain securities, the original claim did not constitute a "wrongful act." The district court rejected that argument, holding that "the definition of 'Claim' expressly includes "actual *or* alleged" wrongful acts, thereby contemplating that the allegations ultimately may prove erroneous." *Id.* at *12 (emphasis in original). The court ultimately held that "[b]ecause the Policies' definition of Claim explicitly encompasses actual or alleged wrongful acts, a written demand for damages that later is withdrawn meets the definition." *Id.*

Nomura notes that the Second Circuit affirmed *Quanta Lines* on other grounds, and that to date, no other court has followed *Quanta*'s logic in this regard. To do so, Nomura argues, would mean that "a wholly spurious claim could be used to preclude coverage for subsequent claims despite the total absence of any credible basis for [the] allegations." (Pl. Opp. 17). The Court is not as convinced. The Policies' definition of Claim, like the policy at issue in *Quanta Lines*, encompasses alleged or actual acts or omissions, not just properly alleged acts or omissions. A contrary reading of the Policies could permit an insurer to withdraw or deny coverage based upon its determination that the Claim was improperly alleged, or that the plaintiff did not have standing to pursue that claim. The Court agrees with *Quanta Lines* and finds that the language of the Policies at issue here could encompass a Claim that was later dismissed for lack of standing. Nonetheless, this issue is largely academic, in that the Court has found there to be a sufficient factual nexus between *Plumbers' Union* and the Underlying Actions separate and apart from any overlap in offerings.

relatedness, and appears to argue for an offering-by-offering distinction. Such a definition runs afoul of the relevant case law. *See Zunenshine*, 1998 WL 483475, at *5 (observing that to demonstrate a sufficient factual nexus, the claims need not "involve precisely the same parties, legal theories, Wrongful Acts, or requests for relief").

More importantly, Nomura did nothing to demonstrate that these identified differences mattered, i.e., that they were anything other than differences in name only. For instance, while the identities of the plaintiffs vary, each is a sophisticated investor that relied upon allegedly material (and substantively identical) misstatements in the offering documents and was harmed as a result. And while the Nomura Subs' identities differ, the complaints make no distinction among the Nomura defendants' liability based upon their alleged roles in the offerings. Moreover, although the Underlying Actions allege claims in connection with different offerings, the alleged misstatements in those offering documents are largely identical. And while the relevant offerings occurred over a roughly two-year period, Nomura has introduced no evidence that the differences in date mattered; indeed, the Underlying Actions make no such allegation. To be sure, the offerings securitized different mortgage pools (Nomura Br. 19), but the complaints fail to distinguish liability based upon differing mortgage pools — perhaps because the pools contained strikingly similar categories of underlying mortgages, described in the relevant offering documents using strikingly similar language and data. (*See, e.g.,* Connuck Decl. Ex. 1-3 (appendices from the *FHFA* and

34

*FHLB-Boston* Actions reviewing misstatements in the prospectus supplements)).

As for other proffered bases of non-relatedness, Nomura contends that to the extent underwriting guidelines were at issue, "the mortgage loans in the different trusts were originated by numerous different but unrelated lenders (in some instances, over 100) pursuant to individual underwriting guidelines." (Nomura Opp. 7).  Yet it introduces no evidence indicating that underwriting guidelines actually differed by lender, and instead leaves the Court simply to infer as much.  The Underlying Actions allege that the bare minimum of lending guidelines described in the offering documents were not met; such an allegation extends across lenders.  And even if hundreds of different lenders originated the mortgage loans at issue, just two lenders are singled out repeatedly in the complaints.  (*See Plumbers' Union* CAC ¶¶ 69, 83-103 (FNBN's failure to adhere to underwriting guidelines), 104-118 (Silver State Bank's failure to adhere to underwriting guidelines); *NCUA California-WesCorp* Compl. ¶¶ 181-97 (incorporating allegations in *Plumbers' Union* regarding FNBN's failure to adhere to underwriting guidelines), 249-56 (Silver State Bank's failure to adhere to underwriting guidelines); *NCUA Kansas-U.S. Central* Compl. ¶¶ 167-73 (incorporating allegations in *Plumbers' Union* regarding FNBN's failure to adhere to underwriting guidelines), 223-27 (Silver State Bank's failure to adhere to underwriting guidelines); *FHLB-Boston* Compl. ¶¶ 616-28 (Silver State Bank's failure to adhere to underwriting guidelines); *FHFA* Compl. ¶ 120 (Silver State Bank's failure to adhere to underwriting guidelines)).

Nomura also attempts to differentiate the instant case on the basis that the Policies utilize seemingly narrower language in defining relatedness than do the policies at issue in many of the cases cited by Federal.  (*See* Def. Opp. 10-19 (citing, *inter alia*, *XL Specialty Ins. Co.* v. *Perry*, No. CV 11-02078-RGK JCGX, 2012 WL 3095331, at *7 (C.D. Cal. June 27, 2012) (coverage precluded for "any claim based upon, arising out of, directly or indirectly resulting from or in consequence of, *or in any way involving* the following: 1) the [prior complaint]; or 2) any fact … or series of facts … *underlying or alleged in* the [prior complaint], regardless of any legal theory upon which such claim is predicated" (emphases added)))); Pl. Opp. 13-15 (noting the cases cited by Defendant in which "in any way involving" language was present in the provision at issue)).  To be sure, the Policies lack the broad "in any way involving" language that many courts have referenced in reaching a relatedness determination.  *See, e.g.*, *Quanta Lines*, 2009 WL 4884096, at *21-22 (emphasizing the "in any way involving" clause in the applicable provision); *Pereira*, 525 F. Supp. 2d at 381 n.16 ("The Court notes that the prior litigation exclusion does not merely exclude claims that 'involve' alleged facts in past litigation, it also excludes claims that involve *'in any way'* alleged facts in past litigation." (emphasis in original)).  This does not mean, however, that the Court applies anything other than the factual nexus test in ascertaining relatedness; Nomura has argued no differently.  (*See* Nomura Br. 24-25 (citing authorities applying the "factual nexus test"); Pl. Opp. 15-16 (same)).

Even were the Court to apply the "factual nexus test" as narrowly as possible, owing to Federal's narrower Policy language, such a nexus plainly exists here.  *Plumbers' Union* and the Underlying Actions are each brought by similarly-injured investors against the same group of defendants who participated in the same types of securities offerings pursuant to nearly identical offering documents involving the sale of interests in pools of mortgage loans that were made, pooled, and securitized in strikingly similar ways.  What is more, the factual allegations in the complaints are more than overlapping, they are nearly identical.  On this basis, the Underlying Actions clearly allege facts which are the "same" as or "similar to" those alleged in *Plumbers' Union*.

Nomura lastly raises a series of policy arguments in support of its litigation position.  First, Nomura protests that a finding of relatedness here would bar coverage for any future RMBS actions, since the offering documents for RMBS actions contain similar categories of information.  (*See* Pl. Reply 5-6). This decision is not so far-reaching.  As the Court made clear above, a conclusory argument of relatedness based solely upon similar categories of information is insufficient.  *See Glascoff*, 2014 WL 1876984, at *6 (finding that "conclusory" allegations "that the two Claims share common facts and circumstances," were insufficient to establish a common factual nexus). Instead, the Court's decision here is a product of its careful "side-by-side comparison" of the factual allegations in *Plumbers' Union* and the Underlying Actions.  *See Zahler*, 2006 WL 846352, at *6.  That the Underlying Actions share a factual nexus with *Plumbers' Union* in this case does not mean that a

future RMBS action, premised upon different misstatements or different conduct by Nomura, could never be covered by the Policies.

Nomura further argues that if Federal had wished to preclude coverage for all RMBS actions, it should have explicitly done so.  After all, Federal had to have known that Nomura faced this potential source of liability, since it sold the Policies to Nomura "only two years after the housing market collapsed … and after *Plumbers' Union* was filed." (Pl. Br. 21).  Indeed, Nomura paid "substantial premiums" to Federal in order to "protect itself against liability to investors, including with respect to its former RMBS business." (*Id.* at 4).  Unfortunately, however, Nomura has introduced no evidence in support of its argument.  At base, Nomura's proffered construction of "relatedness" is simply contrary to the terms of the Policies and the prevailing law within this Circuit.  In this litigation, Nomura has persisted in arguing that its definition of relatedness should apply, while also affirming that the record before the Court was sufficient to ascertain relatedness and that the Policies' terms were unambiguous.  If it had wished its construction to hold more weight, Nomura might have argued that Section 13(g) was ambiguous, and that the parties specifically understood that those "substantial premiums" would cover any future RMBS claims, or any claims based upon different offerings than those at issue in *Plumbers' Union*.  But it did not, and the Court may neither disregard the language of the Policies nor the controlling law, however sensible Nomura's arguments may be.  (*See* Dkt. #46).

Because the Underlying Actions are Related Claims to *Plumbers' Union*, Section 13(g) deems them to have been first made in 2008, and they thus fall outside the ambit of coverage provided by the Policies.  Federal's motion for summary judgment is granted on this basis.

### CONCLUSION

For the reasons discussed herein, Plaintiff's motion for partial summary judgment is GRANTED with respect to the *Plumbers' Union* Exclusion, and DENIED with respect to Section 13(g).  The Clerk of Court is directed to terminate Docket Entry 20.  Accordingly, Defendant's cross-motion for summary judgment is DENIED with respect to the *Plumbers' Union* Exclusion, and GRANTED with respect to Section 13(g).  The Clerk of Court is directed to terminate Docket Entry 27, and to mark the case as closed.

SO ORDERED.

Dated: September 11, 2014
    New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

39